OPINION OF THE COURT
 

 Smith, J.
 

 The issue before this Court is whether a laborer injured while performing a two-year safety test on an elevator can recover under Labor Law § 241 (6). Because the protections of Labor Law § 241 (6) do not apply to claims arising out of maintenance of a building or structure outside of the construction context, such claims must fail.
 

 Bruce Nagel was standing on top of an elevator, performing a two-year safety inspection, when he slipped on oil and fell, injuring his right shoulder. Nagel, and his wife derivatively, brought an action against D & R Realty Corp., the owner of the building, alleging violations of Labor Law §§ 200, 240 (1) and § 241 (6). Specifically, the Nagels alleged that D & R failed to comply with section 23-1.7 (d)
 
 *
 
 of the Industrial Code. D & R answered and subsequently moved for summary judgment dismissal of the complaint.
 

 
 *100
 
 The Nagels withdrew their claims pursuant to Labor Law §§ 200 and 240 (1) and opposed the motion. They submitted Bruce Nagel’s deposition testimony wherein he averred that he had been performing an inspection to “make sure the safeties work[ed] properly on the elevator.” He explained that in layperson’s terms, he was making sure that the “brakes” on the elevator worked. He testified that the entire process took about two hours and that he had been working approximately IV2 hours when the accident occurred.
 

 Supreme Court granted D & R’s summary judgment motion and dismissed the complaint, reasoning that the Nagels had no cause of action because Nagel was performing routine maintenance work that was not construction, demolition or excavation within the meaning of Labor Law § 241 (6). The Appellate Division affirmed, reasoning that although some maintenance work could be considered construction, it could only be so considered where significant structural work rather than routine maintenance was involved. This Court granted leave, and we now affirm, but on a different ground.
 

 On this appeal, the Nagels argue that Bruce Nagel’s injury is a construction injury within the meaning of Labor Law § 241 (6) because that statute specifically incorporates rules promulgated by the Industrial Board of Appeals (formerly the Board of Standards and Appeals). The Nagels argue that section 23-1.4 (b) (13) of the Industrial Code defines construction work to include maintenance work, and neither the statute nor the rules distinguish between routine and nonroutine maintenance.
 

 D & R counters that routine maintenance is not a protected activity within the meaning of Labor Law § 241 (6).
 

 Section 241 of the Labor Law, entitled “Construction, excavation and demolition work,” provides:
 

 “All contractors and owners and their agents, * * * when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements: * * *
 

 “6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.”
 

 
 *101
 
 That the statute is meant to protect workers engaged in duties connected to the inherently hazardous work of construction, excavation or demolition is confirmed not only by its title but also by review of the statute’s legislative history. “Prior to 1962, section 241 * * * [contained] seven subdivisions, the first five of which contained specific, positive commands to all contractors and owners to provide protection deemed appropriate by the Legislature * * *. This nondelegable duty was made designedly broad to reach those who were thought to have the over-all responsibility for the construction of a building in which the Legislature deemed a particular employment inherently hazardous, irrespective of fault and despite lack of control”
 
 (Allen v Cloutier Constr. Corp.,
 
 44 NY2d 290, 297-298 [1978] [citations omitted];
 
 see L
 
 1909, ch 36, § 20, as amended by L 1911, ch 693; L 1913, ch 492; L 1919, ch 545, § 2; L 1921, ch 50, as amended). Subdivisions (6) and (7) were rulemaking in nature, and provided that the Board of Standards and Appeals might make rules for the protection of workers.
 

 In 1962, the Legislature also sought to protect “construction workers not specifically covered by existing standards”
 
 (see
 
 Senate Introducer Mem in Support, Bill Jacket, L 1962, ch 450, at 17). The bill’s introductory memorandum acknowledged that “Section 241 of the Labor Law is repealed and under a new Section 241 safety standards will apply to excavation workers even though the excavation work is not in connection with a building or structure. The detailed safety provisions which are now in Section 241 are eliminated so as to permit the Board of Standards and Appeals greater flexibility in issuing Industrial Code Rules.” (Mem of Indus Commr, Bill Jacket, at 8.) It therefore amended section 241, substituting in place of the prior seven subdivisions — one paragraph setting forth only general duties of owners, general contractors and subcontractors, who must provide “reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.” (L 1962, ch 450, § 3.) This paragraph corresponds to subdivision (6) of the present statute.
 

 The resulting statute, however, was devoid of specific directions imposing absolute liability and, thus, violation of the statute was merely some evidence of negligence
 
 (see Allen v Cloutier,
 
 44 NY2d at 299). In effect, violation of the statute was merely breach of the common-law duty of an owner or general contractor to provide a safe place to work on the construction site
 
 (see Iuliani v Great Neck Sewer Dist.,
 
 38 NY2d 885, 886 [1976];
 
 Rusin v Jackson Hgts. Shopping Ctr.,
 
 27 NY2d
 
 *102
 
 103, 106 [1970]). “It soon became all too evident that the intent of the Legislature — to give the work[er] in the hazardous employment of construction, demolition and excavation added protection, other than workers’] compensation, in the form of nondelegable duties cast upon the owner and general contractor with ensuing liability for breach of those duties — was being easily circumvented under the 1962 version of section 241 by its requirement of control. Owners and contractors were able to insulate themselves from liability for injuries caused by dangerous and unlawful conditions on the job site * * *”
 
 (Allen v Cloutier
 
 44 NY2d at 299).
 

 Accordingly, in 1969, the Legislature again amended section 241 to restore the detailed provisions of section 241 that existed before the 1962 amendment. This was accomplished by enacting the prefatory paragraph — which remains in the present statute — and by deleting subcontractors from the scope of the statute and restoring former subdivisions (1) through (5), which the 1962 amendment had excised
 
 (see
 
 L 1969, ch 1108, § 3). Subdivision (7), added by the 1969 amendment, and subdivision (8) (added by L 1974, ch 754) authorized the Board to promulgate rules and regulations for the protection of workers, a grant of authority identical to that contained in subdivisions (6) and (7) as they had existed prior to 1962
 
 (see Allen v Cloutier,
 
 44 NY2d at 300).
 

 That the Legislature sought to protect workers from industrial accidents specifically in connection with construction, demolition or excavation work is, therefore, patent. In the present case, Nagel’s work of performing a two-year elevator test constituted maintenance work that was not connected to construction, demolition or excavation of a building or structure and is therefore not within the statute’s coverage.
 

 The pertinent regulation is set forth in part 23 of the Industrial Code, entitled “Protection in Construction, Demolition and Excavation Operations.” The Industrial Board of Appeals has defined construction work as
 

 “[a] 11 work of the types performed in the construction, erection, alteration, repair, maintenance, painting or moving of buildings or other structures * * * by way of illustration but not by way of limitation, the work of hoisting, land clearing, earth moving, grading, excavating, trenching, pipe and conduit laying, road and bridge construction, concreting, cleaning of the exterior surfaces includ
 
 *103
 
 ing windows of any building or other structure under construction, equipment installation and the structural installation of wood, metal, glass, plastic, masonry and other building materials in any form or for any purpose” (12 NYCRR 23-1.4 [b] [13]).
 

 The Industrial Code definition of “construction work,” which includes maintenance, must be construed consistently with this Court’s understanding that section 241 (6) covers industrial accidents that occur in the context of construction, demolition and excavation
 
 (see Joblon v Solow,
 
 91 NY2d 457 [1998] [finding that electrician’s injuries from fall were compensable under Labor Law § 241 (6) because his activities of chopping through wall, chiseling and routing conduit pipe and wire to install a clock constituted construction within the meaning of section 23-1.4 (b) (13)];
 
 Page v State of New York,
 
 56 NY2d 604 [1982] [finding that plaintiff injured on job while constructing sanitary sewer when unshored trench collapsed had injuries compensable under Labor Law § 241 (6)]). The definition must be construed consistently with the previously mentioned title of the relevant regulation referring to protections in the construction, demolition and excavation context.
 

 We note that
 
 Mosher v State of New York
 
 (80 NY2d 286 [1992]) is not to the contrary. There, we held that because Labor Law § 241 (6) was not limited to building sites, the plaintiff could bring an action pursuant to that section for injuries sustained while repaving a highway. In contrast to
 
 Mosher,
 
 the injuries plaintiff sustained here did not occur in the context of construction, demolition or excavation at any site.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order affirmed, with costs.
 

 *
 

 Section 23-1.7 (d) of the Industrial Code (12 NYCKR) provides: “Slipping hazards. Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing.”